FILED

2013 JUN 21  AM 9: 52

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ QW

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**EDWARD P. TYSON, M.D.,**
                    **Plaintiff,**

-vs-                                                          **Case No.  A-13-CA-180-SS**

**AUSTIN EATING DISORDERS PARTNERS,
LLC d/b/a Cedar Springs Austin; and M. MARK
McCALLUM, Individually and as CFO of Austin
Eating Disorders Partners, LLC d/b/a Cedar
Springs Austin,**
                    **Defendants.**

_____

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendant M. Mark McCallum's Motion to Dismiss [#5], Plaintiff Edward P. Tyson's

Response [#22], and McCallum's Reply [#24]; and Defendant Austin Eating Disorders Partners LLC

(AED)'s Motion to Dismiss [#6], Tyson's Response [#21], and AED's Reply [#23]. Having

reviewed the documents, the governing law, and the file as a whole, the Court now enters the

following opinion and orders.

## Background

This is a defamation and intentional infliction of emotional distress (IIED) suit arising out

of Tyson's ouster from his role as Chief Medical Officer at AED. Tyson was allegedly removed from

this role for failing to execute a loan guarantee. Some time after Tyson's removal, Tyson requested,

through his CPA, an explanation from McCallum for AED's financial improvement after Tyson left.

A responsive email was sent by McCallum to Tyson, AED's board members, AED's attorney, and

AED's accountant, in which McCallum spoke poorly of Tyson's performance. McCallum's critique inspired this lawsuit.

The Court previously denied Tyson's motion to remand this case to the state court. McCallum now moves to dismiss Tyson's claims under Federal Rule of Civil Procedure 12(b)(2), arguing this Court lacks personal jurisdiction over McCallum, a Missouri resident. AED (joined in the alternative by McCallum) also moves to dismiss, but does not raise jurisdictional objections. Instead, AED argues Tyson has failed to state a claim under Rule 12(b)(6).

## Analysis

### I.    McCallum's Motion to Dismiss—Rule 12(b)(2)

### A.    Legal Standard

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(2). To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the district court considers first whether exercising jurisdiction over the defendant comports with due process. *Religious Tech. Ctr. v Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits. *Id.* Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093.

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). One requirement of due process is that the nonresident

defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *Id.*

The United States Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state. *Freudensprung*, 379 F.3d at 343. "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Id.* Even when the controversy is not related to the defendant's contacts with the forum state, however, a court may nevertheless exercise general jurisdiction over the defendant if the defendant has engaged in "continuous and systematic contacts" in the forum. *Id.* Of course, if a defendant satisfies neither of these tests, the exercise of personal jurisdiction is not proper. *Int'l Shoe*, 326 U.S. at 316.

The plaintiff has the burden of making a prima facie case by showing a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific or general jurisdiction. *Freudensprung*, 379 F.3d at 343. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with

traditional notions of fair play and substantial justice. *Id.* Finally, when a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

**B.     Application**

McCallum contends he has insufficient contacts with the State of Texas to support the exercise of either general or specific jurisdiction. Tyson naturally disagrees on both counts. With respect to general jurisdiction, Tyson contends McCallum's involvement with AED in creating and operating a business in Texas amount to continuous and systematic contacts. Tyson's specific jurisdiction argument is based on both McCallum's activities in Texas on behalf of AED and McCallum's email, which was directed at individuals in Texas.

With respect to general jurisdiction, the Court finds McCallum is protected by the fiduciary shield doctrine. "The fiduciary shield doctrine protects a nonresident corporate officer or employee from the exercise of jurisdiction when all of his contacts with Texas were made on behalf of his employer." *Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex. App.—Dallas 2012, no pet.); *see also Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). All of the contacts Tyson argues establish general jurisdiction are actions McCallum took in his capacity as an officer of AED, such as securing financing for AED and acquiring property for AED's facility. Stated another way, but for McCallum's position with AED, McCallum would have had no contacts with Texas. McCallum's exclusively corporate contacts cannot support the exercise of general jurisdiction. *See Stuart*, 772 F.3d at 1197 n.11 ("Succinctly paraphrased, jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation." (internal quotation marks omitted)); *Tabacinic*, 372 S.W.3d

at 668; *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99–100 (Tex. App.—Houston [14th Dist.] 1995, writ denied).[1]

The specific-jurisdiction issue is more complicated. The first question is whether the fiduciary shield doctrine applies to specific jurisdiction; Tyson contends it does not, while McCallum contends it does. The parties are both partially correct, and their "disagreement" highlights an interesting wrinkle within the doctrine. The second question is the specific-jurisdiction test itself, which requires (1) purposeful availment, and (2) a cause of action arising out of the defendant's contacts with the forum state. *Freudensprung*, 379 F.3d at 343.

"There appears to be a disagreement between some courts in Texas (both federal and state) on whether the fiduciary shield doctrine should be applied to the exercise of *general* jurisdiction only, and not to *specific* jurisdiction." *21st Century Fin. Servs., Inc. v. Mandelbaum*, No. A-10-CA-803 LY, 2011 WL 3844209, at *7 & n.9 (W.D. Tex. Aug. 30, 2011) (collecting cases). But much, if not all, of this disagreement is illusory. The problem arises because the fiduciary shield doctrine does not protect officers from liability for their own torts. *Ennis v. Loiseau*, 164 S.W.3d 698, 707 (Tex. App.—Austin 2005, no pet.). As the *Tabacinic* court recently explained, "a corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct directed at the forum state for which he may be held personally liable." 372 S.W.3d at 668–69.

But it would be something of an overstatement to say the fiduciary shield doctrine simply "does not apply" to instances of specific jurisdiction. As the United States Supreme Court has

---

[1] There is an exception to the fiduciary shield doctrine where the individual is shown to have used the corporation as a mere alter ego. *Tabacinic*, 372 S.W.3d at 669. There are no allegations McCallum was using AED as an alter ego.

cautioned, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). On one hand, if specific jurisdiction is based on particular tortious acts, it is clear the shield offers no protection because those acts themselves may be sufficient to give rise to specific jurisdiction. *See Tabacinic*, 372 S.W.3d at 670 (concluding "the Tabacinics had sufficient minimum contacts to support the exercise of specific jurisdiction over them individually, even if all of their activities in Texas were done in their capacity as an officer, manager or employee"); *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 694–95 (S.D. Tex. 2011) (finding specific jurisdiction based on tortious conduct by corporate agents). On the other hand, specific contacts with the forum made in a corporate capacity and unrelated to the tortious activity may still be shielded. *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 225 F. App'x 775, 795 (5th Cir. 2007) (unpublished) (applying Texas law and concluding "the fiduciary-shield doctrine could prohibit this court from ascribing acts of the [corporation] to [its officer], [but] does not prohibit [the officer] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation"); *Organic Metals v. Aquasium Techs., Ltd.*, No. 3:03-CV-3062-H, 2004 WL 718960, at *4 (N.D. Tex. Apr. 2, 2004) ("A survey of the cases in this district appears to establish . . . the fiduciary-shield doctrine often applies in cases where specific jurisdiction would be the only basis for exercising personal jurisdiction."). In other words, an individual may act on behalf of a corporation in a foreign state without subjecting himself to personal jurisdiction, unless and until he personally commits a tortious act sufficient to invoke jurisdiction.

There is no dispute McCallum had a number of contacts with Texas, though all of those contacts were in his capacity as an AED officer. Those acts are properly shielded from consideration, as McCallum was acting on behalf of the corporation, and the corporation's actions cannot be

imputed to McCallum individually. Only one individual act—the sending of the allegedly defamatory email to recipients in Texas—was allegedly tortious. The fiduciary shield doctrine imposes no barrier to exercising specific jurisdiction over McCallum based on this lone act, but McCallum's email alone must be the trigger.

McCallum argues his email, even if tortious, should not be enough to justify specific jurisdiction because the Texas Supreme Court has vigorously rejected the United States Supreme Court's theory of effects-based jurisdiction. *See Calder*, 465 U.S. at 789 (finding the exercise of personal jurisdiction "proper in California based on the 'effects' of [the defendants'] Florida conduct in California"). McCallum is right about the Texas Supreme Court, which has distinguished *Calder* as an outlier and vigorously critiqued what it calls "directed-a-tort jurisdiction." *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 789–92 (Tex. 2005); *see also Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010). Unfortunately for McCallum, the Fifth Circuit takes a contrary view. Moreover, because cases like *Michiana* interpret the reach of the Due Process Clause rather than the reach of the Texas long-arm statute, this Court must defer to the Fifth Circuit's construction of the same constitutional provision. The Fifth Circuit is friendlier to *Calder*'s theory: "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of the privilege of causing a consequence in Texas." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (internal quotation marks omitted).

There is no question it is the content of McCallum's email which gives rise to Tyson's causes of action, and therefore constitutes purposeful availment. *Wien Air* thus answers both questions in the specific-jurisdiction inquiry. The Court concludes both prongs of the specific-jurisdiction inquiry

are satisfied in this case. McCallum could still prevent the exercise of specific jurisdiction by showing such an exercise would offend traditional notions of fair play and substantial justice. *See Freudensprung*, 379 F.3d at 343. But McCallum's arguments on this point are both conclusory and unpersuasive. While it is true McCallum resides in Missouri and his actions there no doubt play a significant part in this tale, these concerns are easily counterbalanced by Tyson's presence in Texas, both individuals' work for AED in Texas, and the forum state's interest in the suit. *See Wien Air*, 195 F.3d at 215 (noting "the obvious interests of the plaintiff and the forum state" where a cause of action arises directly from tortious activity giving rise to personal jurisdiction, and concluding those interests "justify even large burdens on the defendant"). McCallum's motion is therefore DENIED.

## II.    AED's Motion to Dismiss—Rule 12(b)(6)

### A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining

plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## B.   Application

Before turning to Tyson's individual causes of action, the parties suggest there is a choice-of-law dispute in this case. The Court's choice-of-law analysis begins from the settled premise "a federal district court sitting in a diversity case must apply the choice of law principles of the forum state." *Levine v. CMP Publ'ns, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984). "Texas has adopted the most-significant-relationship test for determining which state's law applies to a tort action." *Id.* (citing *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979)). Texas's test is rooted in the Restatement (Second) of Conflict of Laws, which provides: "'When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be

the state where the person was domiciled at the time, if the matter complained of was published in that state."' *Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150(2) (1971)).

Tyson was living in Texas at the time the email was published in Texas.[2] Under the Restatement test, Texas is therefore "the state of most significant relationship." In addition, the Texas Supreme Court in *Gutierrez* noted a number of other factors relevant to the choice-of-law question, including the place the injury occurred, the place the conduct causing the injury occurred, the residence of the parties, and the place where the relationship between the parties is centered. 583 S.W.2d at 319 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145). These factors also point to Texas rather than some other forum. It is clear from Tyson's response he is suing for alleged damage to his reputation in Texas, caused by an email sent to him and at least one other person in Texas. Although it was sent from Missouri, the relationship between McCallum and Tyson was focused on Texas, where Tyson worked for AED. The mere fact the email was also sent to residents of Wisconsin and Missouri is not enough to justify applying the law of either of those states. Nobody in Wisconsin or Missouri is alleging they were harmed by the email. As the parties' dispute clearly centers on Texas, the law of Texas should apply.

## 1.    Defamation

AED challenges Tyson's various defamation theories on three grounds. First, AED contends McCallum's email is subject to a qualified privilege. Second, AED argues Tyson invited the

---

[2] Though AED frequently objects to the idea McCallum's private email was "published," Texas defamation law does not employ a commonsense definition of that term. Under Texas law, "[d]efamatory statements are 'published' if they are communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.). There is no requirement the statement be made publicly available.

defamatory statements and therefore cannot recover based on them. Third, AED asserts the statements made in McCallum's email simply do not amount to actionable defamation.

First, the Court concludes the communication here is subject to a qualified privilege. As the Fifth Circuit has stated the rule, "[u]nder Texas law, a qualified privilege extends to all accusations or comments about an employee by his employer, made to a person having an interest or duty in the matter to which the communication relates." *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 430 (5th Cir. 2009) (internal quotation marks and alterations omitted). But qualified privilege is not limited to employment situations. Qualified privilege can cover any communication made without malice between parties who share a particular interest or duty. *Richard Rosen, Inc. v. Mendivil*, 225 S.W.3d 181, 195 (Tex. App.—El Paso 2005, pet. denied); *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 99 (Tex. App.—San Antonio 2003, pet. denied). The fact Tyson was not an employee at the time the email was sent is therefore immaterial.[3]

Tyson's only other objection to dismissal based on qualified privilege is his argument the doctrine "creates fact issues" and therefore requires summary judgment. This is simply not true; Texas courts regularly hold the existence of qualified privilege is a question of law. *E.g.*, *Henriquez v. Cemex Mgmt., Inc.*, 177 S.W.3d 241, 253 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Schauer v. Mem'l Care Sys.*, 856 S.W.2d 437, 449 (Tex. App.—Houston [1st Dist.] 1993, *rev'd on other grounds by Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 423 (Tex. 2000)). Moreover, the fact issue Tyson suggests—"excessive publication" of the email to other parties—has

---

[3] Similarly, while qualified privilege may apply to statements made pursuant to investigations of employee wrongdoing, *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995), it is not limited to such situations. Tyson's objection based on the lack of an investigation in this case is therefore too narrow.

no basis in the facts alleged in Tyson's petition, which specifically lists the recipients of the email and does not allege further distribution.

Accordingly, the Court concludes the email sent by McCallum to AED's other board members, AED's legal counsel,  AED's account, and Tyson is protected by qualified privilege. All of these parties share an interest in AED's performance and Tyson's departure from AED. Tyson inquired with AED board members about AED's financial performance following his departure, and AED's internal response may fairly be considered privileged. Moreover, because Tyson does not allege actual malice, there is no basis for believing Tyson could overcome the qualified privilege. *See Frakes*, 579 F.3d at 430.[4]

Second, AED argues Tyson invited the defamation by inquiring about AED's improved financials after his departure. The Fifth Circuit has noted "the general rule in Texas is that a plaintiff cannot complain of a defamation that he 'consented to, authorized, invited or procured.'" *Duffy v. Leading Edge Prods., Inc.*, 4 F.3d 308, 312 n.5 (5th Cir. 1995) (quoting *Lyle v. Waddle*, 144 Tex. 90, 188 S.W.2d 770, 772 (1945)); *see also Oliphint v. Richards*, 167 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). But the "consent" defense does not apply where the individual does not know the defamation will follow the request. *See Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, 617 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("However, there is nothing in the record to indicate that Buck knew Hall's employees would *defame* him when Barber made the inquiries."). AED argues *Buck* has been distinguished repeatedly, and it has: in cases where

---

[4] Tyson's pleading contains one reference to malice, in the section entitled "Damages." Tyson states his injury "resulted from defendants' malice," thereby entitling him to exemplary damages. This allegation is wholly conclusory and not supported by any facts, which perhaps explains why Tyson did not contest AED's argument Tyson never pleaded malice.

there was ample evidence the defamed plaintiff knew the defamation would follow their invitation. At the Rule 12 stage, this Court has insufficient information to conclude whether Tyson knew McCallum would defame him or not, and thus cannot dismiss on this basis.

Third, the Court alternatively dismisses Tyson's defamation claims because they are directed at non-actionable statements. Tyson claims McCallum's email is defamatory per se. "A statement constitutes defamation *per se* if it injures a person in his office, profession, or occupation." *Hancock v. Variyam*, No. 11-0772, 2013 WL 2150468, at *5 (Tex. May 17, 2013) (not released for publication) (internal quotation marks omitted). In *Hancock*, the Texas Supreme Court held statements alleging a physician "lacks veracity and deals in half truths . . . did not injure [him] in his profession as a physician and thus were not defamatory *per se*." *Id.* The court reasoned honesty is not a skill of peculiar necessity to a physician, and therefore could not harm the plaintiff's reputation in his profession. *Id.* at *6.

The Court finds the same is true in this case. The offending email claims Tyson did "a very poor job" as medical director. Not. of Removal [#1-1], Ex. B-4 (1st Am. Pet.), ¶ 12. McCallum faulted Tyson for not referring enough patients to AED's facility, and further accused Tyson of sending patients to different facilities in exchange for financial kickbacks. *Id.* Tyson was described as "a poor marketer and administrator" who "had no idea what needed to be done." *Id.* In short, "[t]he whole operation under [Tyson] was a giant malpractice lawsuit waiting to happen with few patients, high costs and little revenue." *Id.* The bulk of these comments, including the malpractice quip, are precisely the kind of statements Texas courts have held are not actionable because they are statements of opinion, not of fact. *See Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 383 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (statement an insurance broker was "a 'walking

E & O'" was non-actionable opinion). Moreover, these comments indicate Tyson is a terrible businessman, not a terrible physician. The lone verifiable fact, the statement about kickbacks, does not suggest Tyson lacks "a necessary, peculiar skill which would render [him] unfit for proper conduct as a physician," and is therefore not actionable as defamation per se. *Hancock*, 2013 WL 2150468, at *6.

**2.     Intentional Infliction of Emotional Distress**

AED also challenges Tyson's IIED claim. "To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). AED argues (1) IIED is a limited-purpose gap-filler tort not available to defamation plaintiffs; (2) the conduct at issue is not "extreme and outrageous" as a matter of law; and (3) Tyson fails to plead any facts supporting *severe* emotional distress. All three of AED's arguments are well taken.

First, as the Texas Supreme Court has repeatedly stated, IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inv. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id.* Here, defamatory statements are clearly remedied by defamation causes of action, leaving no gap for IIED to fill. This is not one of "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Zeltwanger*, 144 S.W.3d at 447. The Court therefore concludes Tyson cannot maintain an IIED cause of action.

-14-

Second, the conduct Tyson complains of—the sending of an allegedly defamatory email—was not "extreme and outrageous." The Texas Supreme Court, relying on the Restatement (Second) of Torts, has held "liability for outrageous conduct should be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Zeltwanger*, 144 S.W.3d at 445. The Texas Supreme Court takes this standard seriously. *See Creditwatch*, 157 S.W.3d at 815 ("For the tenth time in little more than six years, we must reverse an intentional infliction of emotional distress claim for failing to meet the exacting requirements of that tort.").

McCallum's conduct does not meet the "exacting requirements" of the IIED tort. *See Creditwatch*, 157 S.W.3d at 817–18 (employer threatening to fire employee for offering a room in his home to an estranged former employee was "callous, meddlesome, mean-spirited, officious, overbearing, and vindictive," but not extreme and outrageous); *Zeltwanger*, 144 S.W.3d at 448–49 (vulgar jokes, unfavorable evaluations, and similar workplace annoyances not extreme and outrageous). As noted in *Zeltwanger*, the Texas Supreme Court has "held an employer's conduct to be sufficiently extreme and outrageous to support a recovery for intentional infliction of emotional distress on only one occasion." *Id.* at 453 (O'Neill, J., concurring) (citing *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999)). The referenced case, *GTE Southwest*, involved a supervisor whose self-described "management style" resulted in "a regular pattern of behavior" including abusive conduct, purposeful humiliation and intimidation of employees, and repeatedly putting

-15-

employees in fear for their physical well-being. 998 S.W.2d at 617. The manager had "created a workplace that was a den of terror for the employees," which exceeded his right as an employer to criticize, demote, and discipline employees. *Id.* Unlike *GTE Southwest*, this case involves a single email basically calling Tyson a bad business partner. This is not extreme and outrageous. Even if it was mean-spirited, "[o]ccasional malicious and abusive incidents should not be condoned, but must often be tolerated in our society." *Id.* Moreover, McCallum did not simply volunteer the information in an effort to hurt Tyson. Instead, Tyson inquired into the details of AED's improved financial performance after he was ousted. It should come as no surprise an AED officer stated the company's financial outlook improved because it jettisoned an unsatisfactory employee, and such comments are not intolerable in civilized society.

Tyson relies exclusively on a case from the Fifth Circuit, which he contends holds "[m]erely causing the innocent plaintiff to be subject to such an accusation of crime and putting her in fear that it might come passes the bounds of conduct that will be tolerated by a civilized society and is, therefore, outrageous conduct." *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir. 1989). Tyson argues McCallum accused him of taking illegal kickbacks, and therefore acted outrageously. Tyson's reading of *Dean* is far too generous. In *Dean*, the plaintiff's supervisor planted two checks in the plaintiff's workspace in an effort to frame the plaintiff. *Id.* at 304. It was this effort to set up "the innocent plaintiff" which the Fifth Circuit found so appalling. *Id.* at 307. The Fifth Circuit has confirmed this reading of *Dean*, which classifies as outrageous the attempt to frame the plaintiff as a criminal, rather than the mere accusation of criminal conduct. *See MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890, 898 (5th Cir. 1995). Texas courts have also distinguished *Dean* on these precise grounds. *Halliburton Co. v. Sanchez*, 996 S.W.2d 216, 219–20 (Tex. App.—San

Antonio 1999, pet. denied). The Court thus concludes *Dean* is distinguishable. Assuming McCallum did accuse Tyson of illegal conduct, such an accusation in an email sent to Tyson and a handful of AED employees is not extreme and outrageous.

Third, Tyson's allegations of severe emotional distress are insufficient to state a cause of action. While Tyson is correct he must only comply with Rule 8, he must also comply with Rule 8 as it has been interpreted by the United States Supreme Court, which means pleading specific facts in support of his causes of action. "Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it." *GTE Southwest*, 988 S.W.2d at 618. In *GTE Southwest*, for example, severe emotional distress was found where the plaintiffs testified they had sought medical treatment, were prescribed medication, and were diagnosed with post-traumatic stress disorder. *Id.* at 618–19. Tyson's pleading only repeats boilerplate phrases like "severe emotional distress" without alleging any particular facts supporting such phrases. This falls short of meeting the burden of pleading "specific facts, not mere conclusory allegations." *Tuchman*, 14 F.3d at 1067. Without some factual allegations evidencing severe emotional distress, Tyson's IIED claim is merely speculative, not plausible, and therefore must be dismissed. *See Iqbal*, 566 U.S. at 678.

## Conclusion

The Court concludes it may properly exercise personal jurisdiction over McCallum, and therefore denies his Rule 12(b)(2) motion. McCallum has joined AED's Rule 12(b)(6) motion, however, and that motion has merit. The Court thus finds Tyson has failed to state any claim for which relief can be granted.

Accordingly,

IT IS ORDERED that Defendant M. Mark McCallum's Motion to Dismiss [#5] is DENIED;

IT IS FURTHER ORDERED that Defendant Austin Eating Disorders Partners LLC's Motion to Dismiss [#6], joined by McCallum, is GRANTED;

IT IS FINALLY ORDERED that all claims brought by Plaintiff Edward Tyson are DISMISSED WITHOUT PREJUDICE. Tyson shall have TWENTY (20) DAYS from entry of this order to file an amended complaint. If no amended pleading is timely filed, this case will be closed.

SIGNED this the 20th day of June 2013.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE